IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| GREGORY J. JANICKI,<br><br>        Plaintiff,<br><br>    v.<br><br>WASHINGTON TOWNSHIP BOARD OF EDUCATION, *et al.*,<br><br>        Defendants. | HONORABLE KAREN M. WILLIAMS<br><br>Civil Action<br>No. 22-4389 (KMW-MJS)<br><br>**OPINION** |

**Gregory J. Janicki,** *pro se*
725 Elmhurst Pl.
Glassboro, NJ 08028

**Jeffrey L. Shanaberger, Esquire**
Hill Wallack, LLP
21 Roszel Road
P.O. Box 5226
Princeton, NJ 08543
*Counsel for Defendants Washington Township Board of Education, Joseph N. Bollendorf, Shawnequa Carvalho, Paul Esposito, Virginia Murphy, Candace Zachowski, Danielle Halpin, Karen Garrison, Renee Pollard, Raymond Dinovi, Julie Kozempel, Janini Wechter, Brian Ellis, Elayne Clancy, Connie Baker, Natalie Beury, Stacey DiMeo, Kathleen Gallinaro, and Jonathan Strout*

**John L. Slimm, Esquire**
Marshall, Dennehey, Warner, Coleman, & Goggin, PC
15000 Midlantic Drive, Suite 200
P.O. Box 5429
Mount Laurel, NJ 08054
*Counsel for Defendant Joseph Betley*

**WILLIAMS, District Judge:**

*Pro se* Plaintiff Gregory J. Janicki ("Plaintiff") brings this action against Defendant Washington Township Board of Education (the "Board") alleging that he was wrongfully terminated from his teaching position due to religious discrimination and retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* after filing a charge of discrimination (the "Charge of Discrimination") with the Equal Employment Opportunity Commission ("EEOC"). Presently before the Court is Plaintiff's Motion for Leave to File an Amended Complaint (the "Motion to Amend") in which he attempts to re-introduce into this action employees of the Washington Township School District (the "District"), members of the Board, and an attorney who represented the Board in Plaintiff's tenure proceedings after this Court granted summary judgment in their favor.[1] (ECF No. 53). Also before the Court is the Board's converted motion for summary judgment (the "SJ Motion") and supplemental briefing addressing Plaintiff's argument that he preserved his religious discrimination claim by not presenting it during his tenure proceedings.[2] (ECF Nos. 27, 57). The Board, the Board Defendants, and Betley have opposed Plaintiff's Motion. (ECF No. 55). The Court has decided the Motions after considering the written submissions and oral argument, without additional oral argument pursuant to Local Civil Rule 78.1(b). For the reasons that follow, the Court **GRANTS** the Board's Motion and **DENIES** Plaintiff's Motion.

---

[1] Plaintiff attempts to re-introduce into this action Joseph N. Bollendorf, Superintendent of Washington Township Public Schools ("Bollendorf"), Shawnequa Carvalho, Paul Esposito, Virginia Murphy, Danielle Halpin, Karen Garrison, Renee Pollard, Raymond Dinovi, Julie Kozempel, Janine Wechter, Brian Ellis, Elayne Clancy, Connie Baker, Natalie Beury, Stacey DiMeo, Kathleen Gallinaro, and Jonathan Strout, principal of Washington Township High School ("Strout"), (collectively, the "Board Defendants"), Candice Zachowski ("Zachowski") and Joseph Betley ("Betley"). (ECF Nos. 53, 57).

[2] Plaintiff presented this argument during this Court's February 20, 2024 oral argument on the Board's motion, the Board Defendants, Zachowski, and Betley's converted motions for summary judgment. (*See* ECF No. 47).

## I.    FACTUAL BACKGROUND

For approximately nineteen years, Plaintiff was employed by the District as a music teacher and received tenure during the course of his employment. (ECF No. 27-2 at 35-36, 128-130). During his employment, he was represented by the Washington Township Education Association (the "Association") for purposes of collective bargaining, grievance processing, and the establishment of terms and conditions of employment. (*Id.*) The Board and the Association are parties to a series of collective negotiation agreements that control the terms and conditions of employment of certified teachers, including the processing of grievances and the establishment of just cause disciplinary actions taken by the Board, up to and including termination. (ECF No. 27-2 at 36).

On February 3, 2020, Bollendorf filed tenure charges seeking Plaintiff's dismissal from his tenured teaching position pursuant to the Tenure Employees Hearing Law (the "Hearing Law"), N.J.S.A. 18A:6-10.[3] (ECF Nos. 52-17 at 2, 27-2 at 36). The tenure charges alleged eight counts of unbecoming conduct and other just cause. (ECF No. 52-17 at 2). Four counts of unbecoming conduct alleged that Plaintiff: 1) "without authority distributed in the workplace highly controversial propaganda from a fringe medical association . . . that advocates . . . labeling transgender students as suffering from a mental disorder, and adults who support the gender transition process as child abusers" ("Charge 1"); 2) "repeatedly exhibit[ed] a continuous and ongoing pattern of intolerance and/or antagonism toward individuals based on their sexual orientation, as well as their gender identity or expression" ("Charge 2"); 3) "repeatedly ma[de]

---

[3] N.J.S.A. 18A:6-10 prohibits the dismissal or reduction in compensation of an individual that holds a tenure position in the public school system in New Jersey "except for . . . unbecoming conduct, or other just cause, and then only after a hearing held . . . by the commissioner, or a person appointed by him to act in his behalf."

intentional misrepresentations to administration when conducting investigations in order to hide and/or mitigate his misconduct" ("Charge 3"); and 4) "secretly tape recording private conversations between Central Office Administration in which he was not a party to during an investigative interview . . . in violation of [New Jersey's] wiretapping laws, N.J.S.A. 2A:156A-1 *et seq*." ("Charge 5") (collectively, the "Tenure Charges"). (ECF No. 52-1 at 1-5).

On February 21, 2020, Plaintiff submitted a statement responding to the tenure charges brought against him ("Statement of Position"). (ECF No. 52-5). In that statement, Plaintiff stated that he was "not asserting an affirmative and separate defense of religious and/or political discrimination, intimidation and/or retaliation in this tenure proceeding, and is preserving those claims and defenses for pending and/or to be filed civil and/or administrative complaints, including but not limited to, his pending DCR and EEOC Complaints." (*Id*.)

On February 26, 2020, Plaintiff was suspended for 120 days with pay pursuant to N.J.S.A. 18A:6-14, following the filing of a certificate by the Board in support of the Tenure Charges. (ECF No. 52-17 at 2). Since the expiration of Plaintiff's 120-day suspension with pay, Plaintiff continued to be on a suspension with pay as of August 31, 2021. (*Id.*) Plaintiff responded to the Tenure Charges and the matter was transmitted to the New Jersey Commissioner of Education, who, in turn, assigned the matter to Gary Kendellen (the "Arbitrator"), who presided over Plaintiff's tenure arbitration matter pursuant to N.J.S.A. 18A:6-16 through -17.1. (ECF No. 27-2 at 36). Betley represented the Board during the course of the arbitration proceedings. (ECF Nos. 13-9, 13-10, 13-12).

The arbitration matter developed a record that included motion practice, multiple days of hearings, witness testimonies, and the submission of closing argument in the form of briefing by both parties. (ECF No. 27-2 at 36). Plaintiff did not testify in his defense during the hearings. (*Id.*)

4

On August 31, 2021, the Arbitrator issued an opinion and award (the "Arbitration Award") finding the Board had just cause to issue the Tenure Charges and that they were of a sufficient seriousness for the Board to dismiss Plaintiff from his tenured position. (ECF No. 52-17 at 49; ECF No. 27-2 at 36, 37). Plaintiff did not attempt to modify, correct, or vacate the Arbitration Award after it was issued. (ECF No. 27-2 at 37).

On March 1, 2022, Plaintiff filed the Charge of Discrimination with the EEOC alleging that his employment was improperly terminated. (ECF No. 27-2 at 37). In the Charge of Discrimination, Plaintiff alleged he was terminated from his employment in February 2020, was "discriminated against due to [his] religion (Christian) in violation of Title VII of the Civil Rights Act of 1964," that the Board "failed to provide [him] with a religious based accommodation regarding the LGBTQ agenda," and that "due to [his] religious beliefs" he was "given write ups, suspended, and discharged." (ECF No. 27-2 at 37, 130).

On March 25, 2022, the Board filed a complaint in New Jersey state court to confirm the Arbitration Award (the "State Court Complaint"). (ECF No. 27-2 at 35-39). The State Court Complaint sought to confirm the Arbitration Award after Plaintiff filed his March 1, 2022 EEOC charge. (*Id.*) The Board alleged Plaintiff "did not attempt to modify, correct, or vacate" the Arbitration Award and that, by filing the EEOC charge, Plaintiff "was seeking to obtain a result from the EEOC that contradicts the findings of the [Arbitration Award]." (*Id.* at 37-38). On March 31, 2022, the state court entered an order directing Plaintiff to appear and show cause why judgment should not be entered against him. (ECF No. 27-2 at 18-19).

On April 7, 2022, the EEOC issued a letter to Plaintiff dismissing his EEOC charge because it was not timely filed and providing Plaintiff with notice of his right to sue. (ECF No. 1-3). On May 11, 2022, the state court issued an order (the "May 11 Order") confirming the Arbitration

Award and ordering that Plaintiff was "precluded from repudiating, rejecting, disclaiming, renouncing, contesting and/or challenging the factual findings, credibility findings and determination of just cause in the [Arbitration Award] . . . in any subsequent administrative, judicial, or arbitration proceedings." (ECF No. 27-2 at 33-34). The May 11 Order also indicated that the State Court Complaint was unopposed. (*Id.*) On June 30, 2022, Plaintiff filed a second charge of discrimination with the EEOC which appears to be nearly identical to the Charge of Discrimination he filed in March 2022. (ECF No. 1-3 at 3-5).

On July 1, 2022, Plaintiff commenced the instant action against the Board, the Board Defendants, Zachowski, and Betley, alleging in the Complaint religious discrimination and retaliation in violation of Title VII. (ECF No. 1). Thereafter, the Board, the Board Defendants, and Betley filed Motions to Dismiss (ECF Nos. 13, 27, 36), which this Court converted to motions for summary judgment pursuant to Fed. R. Civ. P. 12(d). (ECF No. 43). This Court held oral argument on February 20, 2024 and issued a February 22, 2024 order granting the converted motions for summary judgment in favor of Betley, the Board Defendants, and Zachowski, leaving the Board as the remaining defendant in this action. (ECF No. 47). The Court also ordered that: 1) Plaintiff "submit all documents related to his charge of discrimination filed with the New Jersey Division on Civil Rights and the [EEOC]"; 2) the Board submit the full record of Plaintiff's tenure proceedings; and 3) Plaintiff and the Board submit briefing "addressing Plaintiff's argument that he preserved his religious discrimination claim by not presenting it during his tenure proceedings." (*Id.*)

Following oral argument, Plaintiff filed the instant Motion to Amend (ECF No. 53), which the Board, the Board Defendants, Zachowski, and Betley opposed. (ECF Nos. 55, 56). The Board also submitted briefing addressing the argument that Plaintiff preserved his religious

discrimination claim by not presenting it during his tenure proceedings. (ECF No. 57). Thereafter, Plaintiff filed his proposed amended complaint as an exhibit to his Motion to Amend.[4] (ECF No. 59).

Plaintiff's proposed amended complaint names the Board Defendants, Zachowski, and Betley – parties who have been dismissed from the instant action pursuant to this Court's February 22, 2024 Order granting these parties' converted motions for summary judgment – and the Board.[5] (ECF No. 59). The proposed amended complaint also asserts the following five claims: 1) "wrongful termination due to religious discrimination," 2) "defamation of character," 3) "violation

---

[4] Under Local Civil Rule 15.1, a party seeking to amend a pleading is required to "attach to the motion: (1) a copy of the proposed amended pleading; and (2) a form of the amended pleading that shall indicate in what respect(s) it differs from the pleading which it proposes to amend, by bracketing or striking through materials to be deleted and underlining materials to be added." L. Civ. R. 15.1. As Plaintiff is *pro se*, his filings, including the instant Motion to Amend, are "to be liberally construed." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "[a]ll litigants must comply with the Federal Rules of Civil Procedure and the Local Civil Rules," *Swift v. Pandey*, No. 13-650, 2016 WL 11220838, at *1 (D.N.J. July 13, 2016) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). While "there is often a leniency regarding full technical compliance with the Rules granted in a *pro se* litigant's favor," *Swift*, 2016 WL 11220838, at *1, "[t]his leniency . . . should not be abused by *pro se* litigants . . . [because they] have an obligation to comply with Court orders." *Edelson v. Cheung*, No. 13-5870, 2017 WL 150241, at (D.N.J. Jan. 12, 2017) (quoting *Creenden v. Home Depot*, No. 06-3669, 2007 WL 1521439, at *2 (D.N.J. May 23, 2007)). While Plaintiff did not attach an amended complaint to his Motion to Amend, the Court, in exercising leniency over Plaintiff's submissions due to his *pro se* status, will consider the proposed amended complaint he later filed on the docket as an exhibit to his Motion to Amend. (ECF No. 58). Therefore, the Court finds Plaintiff complied with the first requirement of Local Civil Rule 15.1. However, Plaintiff has not fully complied with Local Civil Rule 15.1 as he failed to provide a form of the amended pleading that indicates how it is different from the complaint he initially filed in this action. Rule 15.1 requires that Plaintiff bracket or strike through materials to be deleted and underline materials to be added. However, given that Plaintiff is proceeding *pro se*, the Court excuses his noncompliance "in order to reach the merits of the instant motion." *Sung v. New Jersey*, No. 17-11960, 2019 WL 5061277, at *1 n.2 (D.N.J. Oct. 9, 2019).

[5] As this Court's February 22, 2024 Order granted summary judgment as to the Board Defendants, Betley, and Zachowski, those parties have been dismissed from this action and the only remaining defendant is the Board. Plaintiff now attempts to bring those parties back into the instant action. The February 22 Order granting the converted motions for summary judgment was a final order. *See Bullard v. Blue Hills Bank*, 575 U.S. 496, 506-09 (2015); *see also* 28 U.S.C. §1291. If Plaintiff wished to challenge the February 22 Order, he had two options under the Federal Rules of Civil Procedure and the Local Civil Rules of this District: 1) file a notice of appeal within 30 days after entry of the order, *see* Fed. R. App. P. 4(a)(1)(A); or 2) file a motion for reconsideration within 14 days from the date of the order, *see* L. R. Civ. P. 7.1(i). Plaintiff did not pursue either of those two options. While Plaintiff is afforded leniency due to his *pro se* status, he is neither "relieve[d] . . . of the consequences of that procedural misstep," *McHale v. Kelly*, 527 F. App'x 149, 152 (3d Cir. 2013), nor of the procedural rules that apply to all litigants. *See Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Accordingly, Plaintiff's attempt to include parties that have already been dismissed from this action is barred. Accordingly, Plaintiff's request for leave to file an amended complaint will apply only to the Board, the single remaining party in this action.

of constitutional rights," 4) "violation of first amendment to the constitution," and 5) "violation of the Civil Rights Act of 1964, Title VII."[6] (*Id.*)

## II.    STANDARDS OF REVIEW

### a.  Converted Motion for Summary Judgment

A court may grant summary judgment when the materials of record show "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir. 1983). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)); *see also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and 'come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256–57. "A non-moving

---

[6] The Court notes Plaintiff included a "wrongful termination due to religious discrimination" claim in his original complaint. (*See* ECF No. 1).

party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, AFL-CIO,* 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587.

### b. Motion for Leave to File an Amended Complaint

Under Federal Rule of Civil Procedure 15(a), the Court should freely grant leave to amend in the absence of circumstances such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party," or "futility of amendment." *Foman v. Davis*, 371 U.S. 178, 183 (1962). "Amendment of the complaint is futile if the amendment will not cure the deficiency in the original complaint or if the amended complaint cannot withstand a renewed motion to dismiss." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988); *see also Flowers v. Delaware,* No. 22-1877, 2022 WL 2800814, at *1 (3d Cir. July 18, 2022) (finding district court did not abuse its discretion in dismissing complaint without providing plaintiff opportunity to amend because amendment would have been futile). In other words, "'[f]utility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Killion v. Cohen*, No. 16-5356, 2017 WL 2426860, at *2 (D.N.J. June 5, 2017) (quoting *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000)). "In assessing 'futility,' the [d]istrict [c]ourt applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.* (quoting *Shane*, 213 F.3d at 115).

When the Court considers whether to grant leave to amend a complaint, it must also review the proposed amended complaint for compliance with Federal Rule of Civil Procedure 8. Under

Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under Rule 8(d), each allegation in the complaint "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). "The statement should be plain because the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him [or her] to answer and prepare for trial." *Kamdem-Ouaffo v. Huczko*, 810 F. App'x 82, 84 (3d Cir. 2020) (quoting *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988)). "And '[t]he statement should be short because '[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.'" *Id.* (quoting *Salahuddin*, 861 F.2d at 42). "'Taken together,' Rules 8(a) and 8(d)(1) 'underscore the emphasis placed on clarity and brevity by the federal pleading rules.'" *Binsack v. Lackawanna Cty. Prison*, 438 F. App'x 158, 160 (3d Cir. 2011) (quoting *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702 (3d Cir. 1996)).

When seeking leave to amend after a motion for summary judgment is filed, "courts in this District evaluate proposed amendments under a 'heightened standard.'" *Jose Luis Pelaez, Inc. v. Pearson Ed., Inc.*, No. 2:16-5216, 2019 WL 2403088, at *2 (D.N.J. June 7, 2019). "The plaintiff must 'show not only that the proposed amendment has 'substantial merit' . . . but also come forward with 'substantial and convincing evidence' supporting the newly asserted claim.'" *Id.* (quoting *Phillips v. Borough of Keyport*, 179 F.R.D. 140, 149 (D.N.J. 1998)). The grant or denial of leave to amend a complaint is within the discretion of the district court. *Foman*, 371 U.S. at 182.

Here, the Board filed a motion to dismiss that was converted into a motion for summary judgment. "After a motion for summary judgment has been filed, it is appropriate to consider the evidence submitted by the parties in determining whether amending the complaint would be

futile." *Anil Enterprises v. Getty Petroleum Marketing, Inc.*, No. 07-3688, 2009 WL 467844, at *2 (D.N.J. Feb. 23, 2009) (collecting cases in which courts granted and denied motions to amend complaints based on a review of evidence submitted after the filing of summary judgment motions).

## III.    DISCUSSION

### a.   Converted Motion for Summary Judgment

The Court first addresses Plaintiff's wrongful termination due to religious discrimination and retaliation claims, which were included in Plaintiff's Complaint[7] and which this Court reserved its decision on with respect to the Board during the February 20, 2024 oral argument, to determine whether there is a genuine issue as to any material fact such that the Board is entitled to judgment as a matter of law pursuant to Federal Rule of Civil Procedure 56.

### 1.   Preclusive Effect of Plaintiff's Title VII Claims

In his Complaint, Plaintiff asserts religious discrimination pursuant to 42 U.S.C. § 2000e.

In his pleadings,[8] Plaintiff also asserts a retaliation claim pursuant to 42 U.S.C. § 2000e, *et al.*, alleging "[i]n further violation of Title VII, due to my religious beliefs, I was given write ups, suspended, and discharged." (ECF No. 1-3 at 5). Plaintiff specifically alleges writing religious-

---

[7] For purposes of clarity, the Court notes that the operative complaint referenced herein is the document Plaintiff filed when he initiated the instant action. (ECF No. 1).

[8] In the filing submitted by Plaintiff initiating the instant action, the only explicit references to "retaliation" are in either an attachment or template document Plaintiff submitted with his Complaint. The attachment is a civil cover sheet where Plaintiff states "Retaliation in Violation of Title VII" as a cause of action. (ECF No. 1-1). The template document submitted by Plaintiff states "Retaliation in Violation of Title VII of the Civil Rights Act of 1964" with numbered paragraphs directing Plaintiff to incorporate certain information, presumably to assist Plaintiff in alleging a retaliation claim. For the reasons stated previously, *supra* n.4, the Court liberally construes Plaintiff's pleading and cites to Plaintiff's Charge of Discrimination, attached to Plaintiff's Complaint, which the Court gleans as Plaintiff's attempt to provide a more fulsome factual basis for Plaintiff's retaliation and religious discrimination claims.

based quotes in his lesson plans which were later presented as a concern to administration. Effectively, it appears that Plaintiff is in fact and substance alleging the Board retaliated against him by filing tenure charges, which lead to Plaintiff's termination. Thus, it is clear that Plaintiff alleges his termination was based on his religious beliefs.

The Board argues Plaintiff is collaterally estopped from alleging religious discrimination and retaliation claims because he raised the issue as a defense in his tenure proceedings. (ECF No. 57 at 10). Although Plaintiff did not submit formal briefing supporting his right to reserve these claims, he instead maintained during this Court's February 20, 2024 oral argument that he reserved his "religious discrimination claim" by not presenting it during his tenure proceedings.[9] (ECF No. 47).

### a. Preclusive Effect of the Arbitration Award

The Court first addresses the preclusive effect of the Arbitration Award and incorporates the following excerpt from *Fuzy v. Westfield Board of Education*, No. 19-18434, 2022 WL 1284731 (D.N.J. Apr. 29, 2022), explaining the interplay between the doctrine of collateral estoppel and an opinion issued by an arbitrator:

> The doctrine of collateral estoppel "bars re-litigation of an issue identical to that in a prior action" . . . [and] has been extended "to state-level agency or administrative adjudications, to the extent that state law gives such adjudications preclusive effect, as long as the agency acted in a judicial capacity and the parties had an adequate opportunity to litigate the issue. In New Jersey, "courts give agency or administrative adjudications full preclusive effect, *i.e.*, they 'may form the basis for application of the doctrine of collateral estoppel,' as long as the proceedings provide "'significant procedural safeguards' similar to those that are provided to litigants in courts of law." Furthermore, "an arbitration award, like an adjudicative determination of an administrative tribunal," can "be issue-preclusive." "Critically, [f]indings made as part of the discipline process will have preclusive impact in later

---

[9] The Court gleans Plaintiff's statement about preserving his religious discrimination claim that he also preserved his retaliation claim. This conclusion is supported by the records from Plaintiff's tenure proceedings.

employment-discrimination litigation raising allegations of employer retaliation based on the same transactional set of facts.'"

*Fuzy*, 2022 WL 1284731, at \*4 (internal citations omitted).

Here, the Court finds the Arbitration Award at issue here carries preclusive effect. Notably, courts in this District have held the arbitration process pursuant to the Hearing Law, which involves "bringing and certifying tenure charges, conducting hearings, rendering an arbitration decision, and seeking appellate review" to be "comprehensive trial-like" and to "fully comport with due process." *Id.*; *see also Tobia v. Lakewood Bd. of Ed.*, No. 16-4850, 2020 WL 7334209, at \*12 (D.N.J. Dec. 14, 2020). The arbitration process "affords employees meaningful procedural safeguards akin to those available in a judicial forum." *Fuzy*, 2022 WL 1284731, at \*5. Here, the Court further finds the Arbitrator acted in a judicial capacity during an eight-day hearing where Plaintiff had the opportunity to challenge the tenure charges brought against him. During the arbitration proceedings, Plaintiff was represented by counsel, engaged in motion practice, offered evidence, cross-examined eight witnesses, and submitted closing argument in the form of briefing.[10] Therefore, the Court finds that the Arbitration Award is entitled to preclusive effect.

### b. Preclusive Effect on the Complaint

Because the Court has found the Arbitration Award carries preclusive effect, the Court must next determine whether Plaintiff's religious discrimination and retaliation claims are barred by the Arbitrator's findings. The Board argues that the Arbitration Award has preclusive effect as to Plaintiff's religious discrimination and retaliation claims. Plaintiff submits it does not.

---

[10] Importantly, the Court notes Plaintiff chose not to modify, correct or attempt to vacate the Arbitration Award, nor did he contest the District's Order to Show Cause why judgment should not be entered against him by the Superior Court of New Jersey, Chancery Division confirming the Arbitrator's award. (ECF No. 27-2 at 37).

"In New Jersey, the doctrine of collateral estoppel bars relitigation of an issue where: '(1) the issue to be precluded is identical to the issue decided in the prior proceeding; (2) the issue was actually litigated in the prior proceeding; (3) the court in the prior proceeding issued a final judgment on the merits; (4) the determination of the issue was essential to the prior judgment; and (5) the party against whom the doctrine is asserted was a party to or in privity with a party to the earlier proceeding.'" *Fuzy*, 2022 WL 1284731, at \*5 (quoting *Matter of Est. of Dawson*, 136 N.J. 1, 20 (1994)). The party asserting collateral estoppel has the burden of showing that all five elements have been satisfied. *Id*.

Next, the Court evaluates whether Plaintiff's religious discrimination and retaliation claims are precluded from being asserted in the instant action pursuant to collateral estoppel.

### c.  Plaintiff's Religious Discrimination and Retaliation Claims[11]

To determine if there is an identity of issues, courts consider "whether there is substantial overlap of evidence or argument in the second proceeding; whether the evidence involves application of the same rule of law; whether discovery in the first proceeding could have encompassed discovery in the second; and whether the claims asserted in the two actions are closely related." *Fuzy*, 2022 WL 1284731, at \*5 (quoting *First Union Nat. Bank v. Penn Salem*

---

[11] As an initial matter, the Court notes that the arbitration hearing record is replete with statements made by Plaintiff's counsel that Plaintiff would be "formally reserving his right to assert claims and defenses of religious and political discrimination, intimidation, retaliation in the context of pending and/or future civil or administrative proceedings, including any causes of action, complaints by the Division of Civil Rights and the EEOC." Transcript of Tenure Proceedings ("Tenure Tr.") at 10:18-24; *see also* 320:5-7, 321:10-16, 342:21-23, 430:3-7; ECF Nos. 52-7, 52-8. In direct contradiction to these reservations, Betley, the Board's counsel during the arbitration proceedings, repeatedly objected to questioning during the arbitration hearing, arguing that certain topics inquired about during direct and cross-examinations related to religious intolerance, discrimination, and/or harassment and that these topics directly overlapped with events that Plaintiff alleged in his "affirmative action complaint." Tenure Tr. at 319:1-12, 326:25-327:25, 342:4-20, 354:24-355:15, 362:10-17; ECF No. 52-7. The Court notes the "affirmative action complaint" referred to by Betley is attached to the Complaint Plaintiff filed in the instant action.

*Marina, Inc.*, 190 N.J. 342, 353 (2007)). In reviewing the arbitration record before this Court, religious discrimination and retaliation were "central theme[s]" of Plaintiff's defense in response to the Tenure Charges. *See Winters v. N. Hudson Regional Fire & Rescue*, 212 N.J. 67, 88 (2012).

At the outset, Plaintiff responded to the Tenure Charges with his Statement of Position, as follows:

> As my personal and strongly held religious beliefs conflict with some of the District's policies, I have sought accommodations from administration members to be excused from certain assemblies and professional development programs. I have initiated and engaged in ongoing discussions with District administration to express my concerns and my conflicting views on behaviors and programs/policies which go against my faith.
>
> . . . .
>
> I have been targeted by Washington Township High School Principal Jonathan Strout since 2015.
>
> . . . .
>
> *My beliefs are my beliefs and should not be a basis for allegations to oust me from the District or any forms of discipline up to and including tenure charges.* I have the ability to hold my religious and political beliefs and at the same time be a good teacher and I have been that teacher for years.

Plaintiff's Statement of Position (emphasis added); ECF No. 52-5 at 3-4.

During the cross-examination of Strout, Plaintiff's counsel[12] questioned Strout about the motivations for his alleged animosity and disparate treatment of Plaintiff. For example, Plaintiff's counsel asked Strout about his reactions to instances where Plaintiff imposed his religious beliefs on students:

> Q.    And as the principal of the high school, you carried with your understanding that [Plaintiff] had previously called students sinners, is that correct?
>
> A.    Yes.

---

[12] For clarity, the Court's reference to "Plaintiff's counsel" is to the attorney who represented Plaintiff during the tenure hearings. In the instant action, Plaintiff is *pro se*.

. . . .

Q.      Okay. And you would agree with me that someone standing in a room saying to himself out loud: Nope, that's sin,[13] is different than confronting a student, looking that student in the eye and calling that student a sinner?

A.      That's a very fine line. I wouldn't necessarily agree with that. . . . in both instances it's a terrible mistake and shouldn't happen in front of students. I mean, it's not appropriate.

. . . .

Q.      And do you recall that one of the letters [from students that were cited in support of the tenure charges] -- and do you recall expressing concern that some of the letters indicated to you that there was an improper discussion of faith or religion in the school? Do you recall that?

A.      Yes.

. . . .

Q.      [Y]ou also recall testifying that during direct testimony that you had concerns with regard to [Plaintiff] raising faith-based issues in his class. Do you recall that?

A.      I recall being asked if there was evidence that [Plaintiff] was not being truthful, that he never discussed faith in the classroom.

Q.      And this is one of the documents that you referred to in support of your answer saying that as you sit there today as a sworn witness that it was your belief that [Plaintiff] had, in fact, discussed faith in the classroom, is that correct?

A.      It's very evident by this document that he has.

Tenure Tr. at 317:2-6, 347:18-348:9, 527:12-18, 531:9-23, ECF No. 52-7.

Plaintiff's counsel also availed himself of the opportunity to ask Strout about his belief that

Plaintiff lied about being granted certain accommodations due to his religious beliefs:

Q.      And are you aware of the fact that during that meeting in October of 2018, [Plaintiff] asked the superintendent for an accommodation of not having to attend the "No Place For Hate" program?

A.      I'm not aware of him asking the superintendent for that.

. . . .

---

[13] Notably, the "Zudick Award" that the Arbitrator relied on observed that Plaintiff's statement, "Nope, that's sin," was in reference to "gay and transgender behavior." *See* Zudick Award, ECF No. 52-18 at 5; Arbitration Award, ECF No. 52-17.

Q.      As you sit here today, you understand that the reason that [Plaintiff] didn't attend that portion of the April 2nd, 2019 faculty meeting was because he was under the impression that he had approval not to appear for that?

A.      I remember that he lied and said he was given approval that he wasn't given.

. . . .

Q.      As you sit here today, when you said he lied, isn't it a fact that what he indicated was that he had asked for permission not to attend?

A.      No. He later went on the record and inaccurately said that he had permission to not attend. But Mr. Selby did not respond to his email that day or have a conversation with him by phone giving him permission to not attend the training in G 208 that day. That's not accurate.

Tenure Tr. at 358:12-17, 364:17-23, 365:13-25, ECF No. 52-7.

Furthermore, the Arbitrator summarized in the Arbitration Award Plaintiff's position with respect to the District's charge that Plaintiff "exhibited a continuous and ongoing pattern of intolerance and/or antagonism toward individuals based on their sexual orientation, gender identity or expression." (ECF No. 52-17 at 19). The Arbitrator stated it was Plaintiff's belief that the District had not "produced one instance of his exhibiting an outward animus toward a student or other staff member due to their sexual orientation or evidence in support of this alleged 'pattern' for the time when [Strout] was employed elsewhere, whereas there is an undisputed history of animosity between [Strout] and [Plaintiff]." (*Id.*) Notwithstanding this position, the Arbitrator ultimately rejected this defense and found that "the evidence provided by the District . . . is sufficient to establish support for its Tenure Charge 2 – that [Plaintiff] repeatedly exhibited a continuous and ongoing pattern of intolerance and/or antagonism toward individuals based on their sexual orientation, gender identity or expression." (*Id.* at 23). Finding sufficient evidence in support of this charge, the Arbitrator concluded that Plaintiff "demonstrated conduct unbecoming under the applicable legal standards and just cause for his dismissal." (*Id.* at 46).

A review of the record indicates Plaintiff proffered as a defense that the Tenure Charges were a result of being singled out by Strout because Strout did not like Plaintiff, rather than by Plaintiff's own conduct. That argument substantially overlaps with the religious discrimination and retaliation claims he asserts in his Complaint in the instant action. Just as Plaintiff argued as part of his defense during his arbitration proceedings, his Complaint alleges that disciplinary action was taken against him, in part, because of quotes he wrote on lesson plans. Therefore, the Court finds there is an identity of issues between the prior arbitration proceeding and the instant matter.

With respect to the second prong of the collateral estoppel analysis, the Court concludes that the religious discrimination and retaliation issues were actually litigated in the arbitration proceedings. "New Jersey courts consider an issue to have been 'actually litigated' for purposes of collateral estoppel if the 'issue is properly raised, by the pleadings or otherwise, and is submitted for determination, and is determined.'" *Fuzy*, 2022 WL 1284731, at *6 (quoting *Tobia*, 2020 WL 7334209, at *1). In the instant case, the issues of religious discrimination and retaliation were submitted for determination and actually determined by the Arbitrator. As previously discussed, the Arbitrator considered Plaintiff's defense that there was "pretext" for the tenure charges brought against Plaintiff, namely that Plaintiff was "singled out" and "treated" differently by Strout. Ultimately, the Arbitrator rejected this defense, concluding that Plaintiff indeed:

> acted in continuance of his pattern of intolerance and antagonism toward LGBTQ issues when he left Document #3[14] and in furtherance of his prior conduct that, as found in the Zudick Award, included animus towards LGBTQ students; skipping the April 2, 2019 faculty meeting that included a presentation from the GSA student

---

[14] As noted in the Arbitration Award, the parties stipulated in the tenure proceedings to exclude "Document #3" from the record due to its "inappropriateness" and "provocative nature." (ECF No. 52-17 at 40). While Document #3 itself is not included in the record in the instant matter, the Arbitrator reported his "agreement with the District's description" that Plaintiff's involvement with Document #3 demonstrated his "discriminatory behavior toward a protected class" and supported the Arbitrator's conclusion that the District had just cause to issue Tenure Charge 1. (ECF No. 52-17 at 47-48).

club on LGBTQ topics; walking out of a make-up meeting on April 4, 2019, for the portion of the meeting delivered by an administrator that dealt with the LGBTQ presentation; and ignoring Mr. Bollendorf's request to submit a written acknowledgement of his obligation as a public school teacher to attend all training sessions, no matter what the content, and respect LGBTQ students and staff, all of which *showed that [Plaintiff] did not, as Arbitrator Zudick said, "get the message" regarding his professional duty to respect the LGBTQ rights of students and staff*.[15] In the District's view, [Plaintiff's] actions centered on Document #3 climaxed his earlier pattern of conduct.

Arbitration Award at 21, ECF No. 52-17 (emphasis added). In making this determination, the

Arbitrator cited Bolendorf's testimony that:

> [Plaintiff has] *not demonstrated an ability to separate his personal feelings towards his responsibilities as an educator.* . . . This is a question of whether or not he can divorce himself of those convictions that he has to be able to do the job that he's paid to do in a public education setting.
>
> . . . .
>
> *That comment by him as it relates to his religious feelings regarding that population was not appropriate and he was written up.* And a write-up is a write-up.
>
> . . . .
>
> And it was to me a clear demonstration on his part that he was not going to abide by the District's initiatives and what it is that we were trying to do. And it wasn't enough that he could just live in his own classroom and not worry about it and not feel like he had to do anything about it, but now he was going to take his feelings, his thoughts to others in the building by leaving those documents behind - it shifted the whole dynamic.

(*Id.* at 39-41, ECF No. 52-17 (emphasis added)).

---

[15] In the initial arbitration proceedings, the Zudick Award also addressed Plaintiff's religious discrimination and retaliation defense, finding that Plaintiff's refusal to attend the April 2 and April 4, 2019 meetings concerning LGBTQ rights demonstrated that "[h]e obviously either *did not get the message . . . that his personal religious beliefs did not excuse him from his obligation as a public school teacher to respect student and staff LGBTQ rights, or he deliberately ignored that obligation.*" Zudick Award at 20-21, ECF No. 52-18 (emphasis added). Notably, by Order of the Hon. Judge Robert Becker of the Superior Court of New Jersey, Chancery Division, the Arbitrator was ordered to give preclusive effect to the Zudick Award in the arbitration proceedings. Order of the Hon. Robert Becker, J.S.C. ECF No. 52-19; *see also* Arbitration Award at 3-4, ECF No. 52-17.

In light of this unrefuted record evidence, the Court finds that the issues of religious discrimination and retaliation were submitted for determination and "actually determined" by the Arbitrator. *See Fuzy*, 2022 WL 1284731, at *6 (quoting *Tobia*, 2020 WL 7334209, at *1).

The Court also finds that the third element of collateral estoppel has been satisfied. The third element applies when "issue[s] of ultimate fact [have] been determined by a valid and final judgment." *In re Dawson*, 136 N.J. 1, 20-21 (1994) (quoting *State v. Redinger*, 64 N.J. 41, 45 (1973)). "For purposes of issue preclusion . . . 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." *In re Docteroff*, 133 F.3d 210, 216 (3d Cir. 1997). "A judgment is sufficiently final where there is nothing to indicate that the 'court has any intention of revisiting the issue . . . , that its findings are unreliable, that [the losing party] did not have sufficient opportunity to be heard before the court entered judgment, or that the . . . court gave insufficient consideration to the issue.'" *Walters v. Tehrani*, No. 13-6544, 2015 WL 1815510, at *12 (D.N.J. Apr. 21, 2015). Here, the Arbitrator's decision is a final judgment on the merits for purposes of the collateral estoppel analysis because the Arbitrator "sustained certain [of the] charges [brought against Plaintiff] and upheld [Plaintiff's] termination." *Fuzy*, 2022 WL 1284731, at *8; *see also Tobia*, 2020 WL 7334209, at *14 ("It is also clear that the arbitration decision was a final judgment on the merits, since the arbitrator sustained the tenure charges based on a preponderance of the evidence, and in turn, affirmed Plaintiff's termination.").

With regard to the fourth collateral estoppel element, the Court finds that the Arbitrator's consideration of the religious discrimination and retaliation issues were essential to the Arbitration Award. "[A]n issue is not essential 'if . . . the judgment is not dependent upon the determination [ ],' because '[s]uch determinations have the characteristics of dicta, and may not ordinarily be the

20

subject of an appeal by the party against whom they were made.'" *Tobia*, 2020 WL 7334209, at *17 (quoting Restatement (Second) of Judgments § 27, cmt. H). In other words, "in determining whether an issue is essential, [the Court] look[s] to whether the issue 'was critical to the judgment or merely dicta.'" *Id*. (quoting *O'Leary v. Liberty Mut. Ins. Co.*, 923 F.2d 1062, 1067 (3d Cir. 1991). "[I]n tenure hearings, an arbitrator must consider 'affirmative or exculpatory defenses' because they 'shift' the 'burden of production' to the school board to offer 'substantial, credible evidence' of conduct unbecoming, inefficiency, or other just cause." *Id*. "If an employee 'proffers and establishes' a defense against the school board's prima facie case, and the board fails to rebut that defense with further proof, then the board has not met its burden of justifying its tenure charges with a preponderance of the evidence, and the charges cannot legally be sustained." *Id*.

Here, the Arbitrator found that Plaintiff failed to establish a religious discrimination and retaliation defense. In sustaining Charge 2, the Arbitrator expressly noted:

> However, notwithstanding [Plaintiff's] assertions that the District has not produced one instance of his exhibiting an outward animus toward a student or other staff member due to their sexual orientation, the [Arbitrator] finds that [Plaintiff] ignores the Zudick Award findings and, of course[,] precede the [Arbitrator's] findings herein as to [Plaintiff's] role in Document #3 . . . [Plaintiff's] role in Document #3 showed a continuing pattern by [Plaintiff] of intolerance and antagonism toward LGBTQ issues and constituted another example of that conduct. Part of the reasons for the [Arbitrator's] conclusion is how futile, self-destructive and poorly executed [Plaintiff's] actions were regarding Document #3, as well as his conduct during his interviews over it, all of which contributed to [the Arbitrator's] conclusion that [Plaintiff] was motivated to continue his pattern of intolerance and antagonism toward LGBTQ issues with Document #3 by *his outrage and his out-of-control zeal* to respond to the recent High School announcement of a LGBTQ Coming Out Day and a faculty meeting about a new transgender policy . . . . Therefore, in the view of the [Arbitrator], [Plaintiff's] response of leaving Document #3 *manifested his deep and ongoing hostility to the recognition that the announcement of LGBTQ Coming Out Day and the new transgender policy were receiving from the District, based upon his self-destructive and poorly executed actions arising nearly mindlessly out of that hostility.*

Arbitration Award at 22, ECF No. 52-17 (emphasis added). The Arbitrator could not have made such findings "without also finding that Plaintiff failed to [provide] 'proof and establish' a defense," be it religious discrimination or retaliation. *Tobia*, 2020 WL 7334209, at *17. "A valid defense would rebut [the Board's] prima facie case, shift the burden [to Plaintiff] and require 'substantial and credible evidence' to sustain [Charge 2 of] the tenure charges." *Id.* The Arbitrator expressly determined that, notwithstanding Plaintiff's assertions that the District had not produced evidence of Plaintiff's animus due to sexual orientation, Plaintiff ignored the Zudick Award and continued a pattern of "antagonism toward LGBTQ issues." Arbitration Award at 22, ECF No. 52-17. Plaintiff's failure to prove a defense was necessarily essential to the Arbitrator's award, which could not have been mere dicta.[16] Moreover, the Arbitrator explicitly noted that because Plaintiff chose not to testify during the tenure proceedings, his submissions have neither been tested by his testimony nor did the District have the opportunity to cross-examine him.

Lastly, the Court finds that the fifth element of collateral estoppel regarding the identity of parties is met. "'[C]omplete identity of parties in the two suits is not required for the application of issue preclusion' so long as 'the party to be precluded . . . had a "full and fair" opportunity to litigate the issue in the first action.'" *Fuzy*, 2022 WL 1284731, at *9 (quoting *Pasqua v. Cnty. of Hunterdon*, No. 15-3501, 2017 WL 5667999, at *15 (D.N.J. Nov. 27, 2017)). Here, the Board asserts collateral estoppel against Plaintiff, who was a party to the tenure proceedings. During the

---

[16] The Court notes the Arbitration Award explained that "in the absence of any argument by [Plaintiff] against the application of the Order in the manner sought by the District, the Undersigned grants the District's request to apply the Court Order to the record evidence herein. As a result, the [Arbitrator] shall not consider any materials presented in [Plaintiff's] Statement of Facts and his Brief as to matters determined in the Zudick Award." Arbitration Award at 8, ECF No. 52-17. The Arbitrator further noted "in view of [Plaintiff's] decision not to testify herein, the [Arbitrator] shall consider the materials presented in his Statement of Facts and his Brief that rely upon his Statement of Evidence or his Statement of Position from the perspectives of the absence of testimony by him and the fact[ ] that there is nothing in the record evidence herein to support the assertions, denials or other pronouncements in his Statement of Position in response to the Tenure Charges . . . and that his submissions therein have not been tested by his testimony as to such or by the District having an opportunity to cross-examine him regarding his testimony or his submissions." (*Id.*)

proceedings, Plaintiff had a full and fair opportunity to litigate the religious discrimination and retaliation issues during the arbitration through oral argument, examination of witnesses, and documentary evidence.

The Court finds that because all five collateral estoppel elements have been satisfied, Plaintiff is precluded from relitigating the issues of religious discrimination and retaliation in the instant matter. This finding inevitably bars the Title VII claims Plaintiff asserts in his Complaint.

Under Title VII, it is unlawful for "an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin . . . ." 42 U.S.C. § 2000e-2(a)(1). "'Religion' is defined as 'all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he [or she] is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." *Webb v. City of Phila.*, 562 F.3d 256, 259 (3d Cir. 2009) (quoting 42 U.S.C. § 2000e(j)). "To establish a prima facie case of religious discrimination, the employee must show: (1) she [or he] holds a sincere religious belief that conflicts with a job requirement; (2) she [or he] informed her [or his] employer of the conflict; and (3) she [or he] was disciplined for failing to comply with the conflicting requirement." *Id*. Here, the Arbitrator found that Charge 2 was brought against Plaintiff due to affirmative acts on Plaintiff's part, namely:  (1) exhibiting "animus towards LGBTQ students"; (2) "skipping the April 2, 2019 faculty meeting that included a presentation . . . on LGBTQ topics"; (3) walking out of a April 4, 2019 "make-up meeting" for the portion that "dealt with the LGBTQ presentation"; and (4) intentionally leaving Document #3 in the main office of the school. Arbitration Award at 21, ECF No. 52-17. Accordingly, the Arbitrator concluded that Plaintiff repeatedly displayed a "continuous and ongoing pattern of intolerance

and/or antagonism toward individuals based on their sexual orientation, gender identity or expression." (*Id.* at 22).

Title VII prohibits an employer from discriminating against an employee "because [the employee] has opposed any practice made an unlawful employment practice by this subchapter . . . ." 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation under Title VII, a plaintiff must show: "(1) [he or] she engaged in activity protected by Title VII; (2) the employer took an adverse employment against [him or] her; and (3) the was a causal connection between [his or] her participation in the protected activity and the adverse employment action." *Moore v. City of Phila.*, 461 F.3d 331, 340-41 (3d Cir. 2006) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)). "Under the third element, a plaintiff must link the harassment at work to a retaliatory animus. Although the plaintiff need not prove that retaliation was the sole reason for an employer's adverse action, he or she must show that the action would not have been taken but for his or her protected activity." *Spence v. Foxx*, 159 F. Supp. 3d 484, 499 (D.N.J. 2014). Here, the Arbitrator's finding precludes Plaintiff from asserting that there was a causal connection between practicing his religion and his termination.

Here, this Court is persuaded by the precept articulated in *Winters*. "A litigant should not be permitted to participate in the administrative system designed to promote a fair and uniform statewide system of public employee discipline" and "raise a retaliation defense (as plaintiff did here), . . . then hold back on the defense in an attempt to save it for later duplicative litigation." *Winters*, 212 N.J. at 72–73. "No efficient and respected system of justice can permit the spectacle, and resulting disrepute, of inconsistent litigated matters involving the same transactional set of facts, notwithstanding that the forums embrace judicial and quasi-judicial proceedings." *Id.* Instead, "if an employee and employer engage the system of public employee discipline

established by law and the employee raises a claim that employer retaliation at least partially motivated the decision to bring the charge or the level of discipline sought," as Plaintiff did here, "then both the employee and employer must live with the outcome, including its potential preclusive effect on related employment-discrimination litigation as a matter of the equitable application of estoppel principles." *Id.* at 73.

Accordingly, for the reasons stated above, Plaintiff's religious discrimination and retaliation claims are barred by the doctrine of collateral estoppel. Furthermore, the Court emphasizes its rejection of the proposition that religious beliefs permit a public servant to engage in affirmative acts of discrimination against a protected class of individuals, as Plaintiff did here. (*See* ECF No. 52-17 at 23); *see Webb*, 562 F.3d at 259; *Moore*, 461 F.3d at 340-41; *Spivack v. City of Philadelphia*, 109 F.4th 158, 166 (3d Cir. 2024) (holding that religious beliefs "do[] not relieve an individual of the obligation to comply with a valid and neutral law of general applicability.").

### b. Motion for Leave to File an Amended Complaint

Having decided that Defendants are entitled to summary judgment with respect to Plaintiff's initial Complaint, the Court now addresses Plaintiff's proposed amended complaint. To this end, Plaintiff asserts two new claims: 1) "defamation of character" and 2) "violation of [the] first amendment to the constitution."[17] (ECF No. 59 at 4). The Court addresses each of the claims

---

[17] Plaintiff separately alleged "violation of first amendment to the constitution" and "violation of constitutional rights." To the extent Plaintiff actually intended to assert that his constitutional rights were violated under the First Amendment, Plaintiff's two allegations, as alleged, are duplicative of each other and would be subject to the same analysis. Accordingly, the Court will evaluate Plaintiff's "violation of first amendment" and "violation of constitutional rights" claims under a First Amendment analysis. Likewise, in his proposed amended complaint, Plaintiff alleges "wrongful termination due to religious discrimination" and "violation of the Civil Rights Act of 1964, Title VII." (ECF No. 59 at 4). Notwithstanding the fact that Plaintiff alleged "wrongful termination due to religious discrimination" in his original complaint, the discrimination he alleges is his termination such that his "wrongful termination" claim does not appear to be independent of his religious discrimination claim. Moreover, to the extent Plaintiff intended to assert his "wrongful termination" claim on the basis of religion in violation of Title VII, Plaintiff's "wrongful termination" and "Title VII" claims, as alleged, are also duplicative of each other. Therefore, the Court will evaluate Plaintiff's "wrongful termination" and "Title VII" claims under a religious discrimination analysis.

in turn to determine whether it will grant Plaintiff leave to amend his complaint and continue to pursue litigation against Defendants.

### 1. Defamation Claim

In connection with his "defamation" claim, Plaintiff contends "the district has . . . caused [d]efamation of his character [in] not being able to get employment, retain or sustain employment."[18] (ECF No. 59 at 8). Plaintiff further contends he was "given write ups because of his sincerely held religious beliefs, suspended, and discharged for his sincerely held religious beliefs" and that "defamation of his character has effectively curtailed his ability to earn a living for his family and work in New Jersey." (*Id.*) It appears that Plaintiff is alleging the Board's tenure dismissal charges, which ultimately led to his termination, constitute defamation and that this has ultimately impacted his ability to find a new job, presumably because his tenure charges and termination are known within the state of New Jersey.

In order to state a claim for defamation under New Jersey law, "a plaintiff must show that the defendant (1) made a false and defamatory statement concerning the plaintiff, (2) communicated the statement to a third party, and (3) had a sufficient degree of fault." *Churchill Downs, Inc. NLR Ent., LLC v. Carstanjen*, No. 14-3342, 2015 WL 5854134, at *7 (D.N.J. Oct. 5, 2015). "In the case of a complaint charging defamation, plaintiff must plead facts sufficient to identify the defamatory words, their utterer and the fact of their publication. A vague conclusory allegation is not enough." *Spyer v. Navient Solutions, Inc.*, No. 15-3814, 2016 WL 5852849, at (D.N.J. Oct. 4, 2016) (quoting *Zoneraich v. Overlook Hosp.*, 514 A.2d 53, 63 (N.J. Super. Ct. App. Div. 1986)). Moreover, because the instant action is at the summary judgment stage, "[a] claim for

---

[18] As Plaintiff has not tethered his defamation claim to a particular state's law, the Court gleans that Plaintiff alleges his claim pursuant to New Jersey law.

defamation requires proof that the defendant made a false statement of facts concerning the plaintiff to someone other than the plaintiff, and did so with actual malice." *Emri v. Evesham Twp. Bd.* of Ed., 327 F. Supp. 2d 463, 470 n.6 (D.N.J. 2004).

"Statements by attorneys, parties and their representatives made in the course of judicial or quasi-judicial proceedings are absolutely privileged and immune from liability." *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 401 (D.N.J. 2009). The litigation privilege applies to any communication: "(1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* The purpose of the litigation privilege is so litigants and their representatives "have an unqualified opportunity to explore the truth of a matter without fear of recrimination." *Thomas v. Ford Motor Co.*, 137 F. Supp. 2d 575, 585 (D.N.J. 2001) (quoting *Hawkins v. Harris*, 661 A.2d 284, 290 (N.J. 1995)).

A review of Plaintiff's proposed amended complaint and the evidence in the record cause Plaintiff's defamation claim to fail. Plaintiff has not pled or shown that (1) the dismissal charges which ultimately led to Plaintiff's termination were false, or (2) that the Board knew the dismissal charges against Plaintiff were false. This claim also cannot succeed because there is no proof of actual malice and, as described above, the Arbitrator found four charges were supported by probable cause.[19] Finally, Plaintiff's defamation claims are barred by the litigation privilege because: (1) the District was authorized by law to issue the Tenure Charges, which (2) initiated the quasi-judicial tenure proceeding; (3) Plaintiff does not dispute that the alleged defamatory allegations were made to achieve the objective of his dismissal; and (4) the basis of Plaintiff's

---

[19] Notably, information regarding tenured dismissals, including Plaintiff's tenure dismissal charges and termination, are "public records" within the meaning of New Jersey's Right-to-Know Law, N.J.S.A. 47:1A-1, *et seq*. *See Emri*, 327 F. Supp. 2d at 470 n.6.

defamation claim is directly related to the underlying tenure proceedings. *See Rickenbach*, 635 F. Supp. 2d at 401; *see Tobia*, 2020 WL 7334209, at *11 (arbitration process pursuant to the Hearing Law is quasi-judicial proceeding).

Accordingly, Plaintiff does not plead the elements of a defamation claim and, even if he did, his proposed defamation claim based on his Tenure Charges and subsequent termination fails as a matter of law.

### 2. First Amendment Claim

Next, with respect to his First Amendment claim, Plaintiff asserts that the "district failed to provide [him] with a religious[-]based accommodation regarding the LGBTQ agenda, such as, using pronouns of the opposite sex to which a student was assigned at birth, allowing students to utilize the bathrooms of the opposite sex to which a student was assigned at birth and attending LGBTQ training." (ECF No. 59 at 8). Plaintiff further alleges "Washington Township Board of Ed, [the] [D]istrict, admin and staff violated his constitutional rights . . . by violating his First Amendment Rights." (*Id.*) Elsewhere in his proposed amended complaint, Plaintiff asserts "[t]he LGBT material he was asked to support was and still is in deep conflict with Plaintiff's religious views and Christian values" and he "expressed his concern of being part of promotions [of] an agenda that went against his sincerely held religious beliefs/faith" (*Id.* at 4). The Court gleans that Plaintiff's First Amendment claim concerns the curtailment of his religious beliefs when the District required him to participate in LGBTQ-related training and not providing him with a religious-based accommodation.[20]

---

[20] As previously stipulated, *supra* n. 4, the Court liberally construes Plaintiff's filings. While Plaintiff does not explicitly plead a cause of action pursuant to 42 U.S.C. § 1983, it appears Plaintiff attempts to plead a civil rights

Section 1983 provides a cause of action for an individual whose constitutional or federal rights are violated by those acting under color of state law:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983. Section 1983 does not on its face create substantive rights. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996). Rather, "it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws." *Id*. To establish a claim under Section 1983, a plaintiff "must demonstrate a violation of a right secured by the Constitution and the laws of the United States [and] that the alleged deprivation was committed by a person acting under color of state law." *Mosca v. Cole*, 217 F. App'x 158, 163 (3d Cir. 2007) (alteration in original) (quoting *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995)). "The first step in evaluating a [S]ection 1983 claim is to 'identify the exact contours of the underlying right said to have been violated' and to determine 'whether the plaintiff has alleged a deprivation of a constitutional right at all.'" *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000) (quoting *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998)). "A defendant in a civil rights action 'must have personal involvement in the alleged wrongs to be liable,' and 'cannot be held responsible for a constitutional violation which he or she neither participated in nor approved.'" *Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) (internal citation omitted).

---

claim by way of alleging that the Board violated his First Amendment rights. Accordingly, the Court will analyze his constitutional claim pursuant to Section 1983.

The First Amendment to the U.S. Constitution, made applicable to the states by the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I; *see also Zelman v. Simmons-Harris*, 536 U.S. 639, 648-49 (2002) (stating that the First Amendment applies to the states and its political subdivisions through the Fourteenth Amendment). More specifically, the First Amendment prohibits the government from burdening the free exercise of religion, "but the First Amendment is only implicated if the governmental burden on religion is 'substantial,' which essentially means that the state may not compel an individual to act contrary to his [or her] religious beliefs." *Harris v. Holmes*, No. 14-460, 2019 WL 291147, *6 (D.N.J. Jan. 23, 2019) (quoting *Anspach v. City of Phila., Dep't of Public Health*, 503 F.3d 256, 272 (3d Cir. 2007)). The Third Circuit has found that a "substantial burden" exists when "1) a follower is forced to choose between following the precepts of his [or her] religion and forfeiting benefits otherwise generally available . . . versus abandoning one of the precepts of his[or her] religion in order to receive a benefit; OR 2) the [g]overnment puts substantial pressure on an adherent to substantially modify his [or her] behavior and to violate his [or her] beliefs." *Real Alternatives, Inc. v. Sec. Dep't of Health & Human Servs.*, 867 F.3d 338, 356 (3d Cir. 2017) (quoting *Mack v. Waren Loretto FCI*, 839 F.3d 286, 304 (3d Cir. 2016)). "The mere assertion of a religious belief does not automatically trigger Frist Amendment protections." *DeHart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000). Only "those beliefs which are both sincerely held and religious in nature are entitled to constitutional protection." *Id*. To establish a substantial burden, the plaintiff must "allege state action that is either compulsory or coercive in nature," which inhibits the practice of his or her religion. *Anspach,* 503 F.3d at 272.

Here, Plaintiff's proposed First Amendment claim fails to allege non-conclusory factual grounds to support the claims he asserts. First, Plaintiff does not allege facts about his sincerely held religious beliefs. Nor does he allege facts to support how his participation or promotion of the "LGBTQ agenda" such as "using pronouns of the opposite sex to which a student was assigned at birth, allowing students to utilize the bathrooms of the opposite sex to which a student was assigned at birth and attending LGBTQ training" infringes on his sincerely held religious beliefs or substantially burdens them. (*See* ECF No. 59 at 8). In fact, no religious belief is described or identified in the proposed amended complaint or any of the allegations underlying it.

Moreover, as Plaintiff has filed a request to amend his complaint, the Court may further consider evidence submitted by the parties in determining whether amending the complaint would be futile. It appears undisputed that Plaintiff voiced his concerns about participating in the District's "LGBTQ agenda" and requested an accommodation. The record before this Court, however, does not establish how Plaintiff's participation or promotion of the "LGBTQ agenda" acts as a "substantial burden" such that it prohibits him from practicing his religion. Furthermore, the record before the Court does not provide clarification into how the "LGBTQ agenda" substantially burdens his beliefs. In fact, the record demonstrates that on at least one occasion, when Plaintiff expressed reluctance in leading a program in his classroom titled "No Place for Hate," a program focused on promoting "diversity and empathy, as well as to dismantle common stereotypes," administration scheduled Plaintiff for "alternative duties" and assigned another staff member to deliver the instruction of the program in Plaintiff's classroom. (ECF No. 52-2). Crucially, Plaintiff "was not disciplined for his opting out of the No Place for Hate program." (*Id.*) For these reasons, Plaintiff's request to amend his complaint to add a First Amendment claim would be futile as no rational factfinder could conclude, from Plaintiff's proposed amended

complaint or from the record before this Court, that Plaintiff's religious beliefs have been substantially burdened by the Board. Moreover, to the extent that Plaintiff were to pursue a First Amendment claim based on his now-settled termination, such claim is barred by collateral estoppel.

Accordingly, Plaintiff's request to amend his complaint to include defamation and First Amendment claims is denied because such amendments would be futile for the reasons set forth herein and those extensively explained in Section a. above.

## IV.     CONCLUSION

For all of the reasons set forth above, the Board's converted Motion for Summary Judgment is **GRANTED** and Plaintiff's Motion to Amend his Complaint is **DENIED.** An accompanying Order shall issue.

Dated: September 19, 2024

KAREN M. WILLIAMS
U.S. DISTRICT COURT JUDGE